IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Kevin Ruggles<br><br>On Behalf of Himself and<br>All Others Similarly Situated,<br><br>    Plaintiff;<br><br>vs.<br><br>Acme Floor Company, Inc.<br>[Registered Agent:<br>Emily Kenney-Moore<br>10100 Marshall Drive<br>Lenexa, KS 66215<br><br>    Defendant. | Case. No:<br><br><br><br><br><br><br>**Jury Demanded** |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Kevin Ruggles ("Plaintiff" or "Ruggles"), by and through his attorneys, brings this action on behalf of himself and others similarly situated against Defendant Acme Floor Company, Inc. ("Defendant" or "Acme"), and alleges, on personal knowledge as to all facts related to him and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1. Plaintiff brings this collective and class action on behalf of himself and all other similarly situated floor refinishing employees against Defendant for its unlawful employment scheme that denies Plaintiff and the floor refinishing employees the wages and benefits to which they were (and are) lawfully entitled.

2. Specifically, Plaintiff and the floor refinishing employees have spent time for Defendant's benefit on various tasks, such as meeting with sales and administrative staff to understand the nature of refinishing projects, loading tools and supplies into company vehicles,

1

performing maintenance on company equipment, and otherwise performing work-related duties, all without being fully compensated for such time.

3. Such policies and practices of Defendant have resulted in Defendant's failure to pay its hourly floor refinishing employees for all of their time work and for overtime wages due. Defendant's practices and policies have failed to properly pay straight time and overtime due and owing to Plaintiff and all other similarly situated employees in violation of the FLSA, 29 U.S.C. §201 *et seq*.

## PARTIES

4. Defendant is a Kansas Corporation with a principal place of business at 10100 Marshall Drive, Lenexa, Kansas 66215.

5. Plaintiff is a Kansas resident with a principal residence at 9104 Bell Road, Apt. 328, Lenexa, Kansas 66219.

6. At all times relevant to this Complaint and until June 3, 2021, Plaintiff was employed as an hourly employee of Defendant in and around Lenexa, Kansas. Plaintiff and all others similarly situated, for the purposes of this collective action, also have performed work as hourly employees of Defendant in and around that location.

## JURISDICTION AND VENUE

7. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

8. The United States District Court for the District of Kansas has personal jurisdiction because Defendant conducts business in Lenexa, Kansas, located within this District.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because Defendant has offices, conducts business and can be found in the District of Kansas and the causes of action

set forth herein have arisen and occurred in substantial part in the District of Kansas. Venue is also proper under 29 U.S.C. § 1132(e)(2) because Defendant has substantial business contacts within Kansas.

## GENERAL ALLEGATIONS

10. Defendant is a wood flooring company that specializes in pre-finished wood floors, hand-scraped wood floors, rift-and-quartered wood floors, and other wood flooring products. Defendant also offers hardwood floor refinishing and restoration services.

11. Defendant offers and performs these services to both residential and commercial clients in and around the States of Kansas and Missouri.

12. Defendant also has two wood flooring production facilities: one in Lenexa, Kansas and one in Brighton, Missouri.

13. Plaintiff was employed by Defendant as a floor refinisher. Defendant paid Plaintiff by the hour. Plaintiff would receive his paycheck once per week.

14. Plaintiff's work for Defendant required Plaintiff to drive Defendant's vehicle (the "Van") to customer job sites where Plaintiff would work on hardwood floors.

15. Prior to departing to a job site, however, Plaintiff would perform various "pre-departure" duties.

16. Plaintiff would arrive at Defendant's shop and "clock in" by writing the time on a time sheet.

17. Plaintiff would help produce samples and "quarter-round" that would be used to show current and potential customers of Defendant what the finished hardwood flooring would look like.

18. Plaintiff would communicate with Defendant's sales personnel, schedulers, and administrative staff regarding the requirements of the specific job.

19. Plaintiff would then locate and assemble job-specific supplies, wood flooring installation tools, wood flooring refinishing tools, and/or other job-related equipment and tangibles. Plaintiff would also clean and maintain the tools required for the job.

20. Plaintiff would then load this job-related equipment and tangibles into the Van.

21. Once these required pre-departure duties were completed, Plaintiff would then drive the Van from Defendant's shop to the job site and perform the job-specific refinishing duties.

22. At the end of the day (or at the end of the job), Plaintiff would drive the Van back to Defendant's shop, park the Van, and then perform "post-arrival" duties.

23. These post-arrival duties included unloading the job-specific equipment, product, and tangibles from the Van and into the shop, as well as other post-arrival functions such as communicating with Defendant's scheduler and other administrative personnel.

24. Plaintiff would not "clock out" and leave Defendant's shop until these post-arrival functions were completed and he left Defendant's shop for the day. Plaintiff would "clock out" by writing his departure time on the time sheet.

25. Based on information and belief, Defendant had "tracking devices" installed on its Vans, or would somehow otherwise keep track of when the Van was not parked at Defendant's shop.

26. Using these tracking devices or other methods of identifying the Van's location, Defendant would only pay Plaintiff for the time when the Van was away from Defendant's shop.

27. Thus, Plaintiff was not compensated for the time spent performing the pre-departure and post-arrival duties that were required components of his job.

28. Although Plaintiff both "clocked in" and "clocked out" by writing on a time-sheet the times he arrived and left Defendant's shop, Plaintiff was not compensated according to the time written on the time sheet. Instead, Plaintiff was compensated only for his time beginning when the Van departed Defendant's shop and concluding when the Van arrived back at Defendant's shop.

29. Even if Plaintiff were paid for the full time that he actually worked, Defendant also arbitrarily and unilaterally manipulated and lowered the rate at which Plaintiff was paid without notifying Plaintiff.

30. Plaintiff was to be paid the rate of $25 per hour. On more than one occasion, however, Defendant unilaterally and arbitrarily decided to pay Plaintiff at a lower hourly rate, sometimes as low as $7.25 per hour.

31. Plaintiff would not discover that Defendant had elected to not pay Plaintiff for the full time that he actually worked or for the hourly rate Plaintiff was to be compensated until Plaintiff received his next paycheck.

32. When Plaintiff would question Defendant about the lower hourly rate, Defendant would tell Plaintiff that "the job took too long."

33. Before, during, and after Plaintiff's employment at Defendant, Defendant employed numerous other floor refinishers who had similar job duties with a similar compensation structure as Plaintiff. Just like Plaintiff, Defendant would only compensate these other floor refinishers for time spent away from Defendant's shop, and would not compensate

these other floor refinishers for their time spent performing the required pre-departure and post-arrival duties.

34. Based on information and belief, Defendant would also arbitrarily reduce the rate of pay for these other floor refinishers, depending on the whims of Defendant.

35. Pursuant to FLSA, 29 U.S.C. § 216(b), Plaintiff's consent form is attached as **Exhibit A**.[1] It is likely other individuals will join this case as opt-in Plaintiffs as the case proceeds.

36. Pursuant to FLSA, 29 U.S.C. § 216(b), Plaintiff seeks to certify the following FLSA Collective:

> All current and former floor refinishers who worked for Defendant at any time within three (3) years prior to the filing of the original Complaint in this action through the date of final judgment.

37. Defendant knew or should have known that Plaintiff and the FLSA Collective performed work for Defendant that required minimum wage and overtime pay. Defendant operated under a scheme to deprive Plaintiff and the FLSA Collective of minimum wage and overtime compensation by only compensating the FLSA Collective for their time worked while away from Defendant's shop in the Van, and not for the time spent performing pre-departure and post-arrival activities as detailed above.

38. Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and as such, notice should be sent to the FLSA Collective. In violation of the FLSA, Defendant has denied minimum wage and overtime pay to numerous similarly situated current and former floor installer and/or refinisher employees who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join. Members of

---

[1] Personal contact information has been redacted for privacy reasons.

the FLSA Collective are known to Defendant and should be readily identifiable through Defendant's records.

## CLASS ACTION ALLEGATIONS

39. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action as a class action on behalf of himself and all others similarly situated.

40. Specifically, Plaintiff brings these claims as a Rule 23 class action on behalf of himself and the following persons:

> All current and former floor refinishing employees who worked for Defendant in Kansas at any time within three (3) years prior to the filing of the original Complaint in this action through the date of final judgment.

41. **Numerosity**: The potential members of the proposed classes are so numerous that joinder of all members would be infeasible and impracticable. While the precise number of class members is unknown to Plaintiff at this time, it is estimated that each of the classes above include at least 20 individuals.

42. **Ascertainable Class**: The proposed classes are ascertainable in that its members can be identified and located using information contained in Defendant's payroll and personnel records.

43. **Typicality**: The claims of Plaintiff are typical of the claims of all members of the classes because all members of the classes sustained similar injuries and damages arising out of Defendant's common course of conduct in violation of the law, and the injuries and damages of all members of the class were caused by Defendant's wrongful conduct in violation of the law, as alleged herein.

44. **Adequacy**: Plaintiff is an adequate representative of the classes, will fairly protect the interests of the members of the classes, and will vigorously pursue this suit. Plaintiff

has no interests antagonistic to the interests of the other members of the classes, and is not subject to unique defenses. Plaintiff's attorneys are competent, skilled, and experienced in litigating class actions of this kind and other complex litigation.

45. **Superiority**: A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over questions affecting only individual class members. Each member of the classes has been damaged and is entitled to recovery by reason of: Defendant's illegal policy of not paying Plaintiff and class members for time actually worked, including minimum wage and overtime pay, as well as not paying Plaintiff and class members the hourly pay rate under which they reasonably believed they were working. A class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

46. **Existence of Predominance and Questions of Fact and Law**: There are common questions of fact and law as to the members of the classes which predominate over questions affecting only individual members of the classes, including without limitation:

    a. Whether Defendant failed to fully and accurately record the hours worked each day and each workweek by the members of the classes as required under applicable state statutes;

    b. Whether Defendant violated Kansas wage and common laws by failing to pay Plaintiff and members of the classes all compensation due and owing;

    c. Whether Plaintiff has been fully compensated; and

    d.   Whether Defendant violated the FLSA.

    e.   Whether Defendant is liable to Plaintiff and the members of the classes for damages claimed hereunder, including but not limited to compensatory and/or punitive damages, injunctive and declaratory relief, pre- and post-judgment interest, statutory and/or liquidated damages, and reasonable attorneys' fees and costs.

## COUNT I – FLSA CLAIMS

47.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

48.    Plaintiff brings his FLSA claims as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by the Defendant as hourly floor refinishing employees within three years from the commencement of this action who have not been compensated for all straight time and overtime premiums for all hours for which they suffered or were permitted to work.

49.    Plaintiffs bring their FLSA claims as an "opt-in" collective action pursuant to Section 16 of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all similarly situated putative plaintiffs of the collective action.

50.    Plaintiff and the putative class members are similarly situated in that they have been subjected to Defendant's common practices or policies of refusing to pay straight time and overtime for all hours worked in violation of the FLSA.

51.    The names and addresses of the putative class members are available from the Defendant. To the extent required by law, Plaintiff will seek notice to be provided to said

putative class members via First Class Mail and/or by the use of techniques and a form of notice similar to those customarily used in collective FLSA actions.

52. Upon information and belief, at all times relevant herein, Defendant has had gross operating revenues in excess of $500,000.00 annually.

53. The FLSA requires each covered employer to compensate all employees for all hours suffered or permitted to work and to pay overtime premiums at a rate of not less than one and one-half the regular rate of pay for work performed in excess of forty hours in a workweek.

54. Upon information and belief, at all relevant times, Defendant maintained a policy and practice of refusing pay for time hourly floor refinishing workers spent at the company facility, where they were required to complete activities benefitting the employer such as meeting with sales and administrative staff to understand the nature of refinishing projects, loading tools and supplies into work vans, and performing maintenance on company equipment.

55. Upon information and belief, Defendant maintained a time sheets at its company facility. Times are recorded when hourly floor refinishing workers arrived in the morning to the facility and left in the evening. However, Defendant only paid workers for time after workers left the facility in the morning, and after they had returned in the evening, omitting from their pay time spent at the facility.

56. Upon information and belief, Defendant maintained GPS tracking devices on company owned vans which were used to begin paying employees once they had left the company's property.

57. All employees who have been paid according to the pay practice of the Defendant described above have been systematically underpaid for their compensable time spent working for the benefit of the Defendant.

58. Defendant's pay practice has resulted in a substantial difference between the amount of time for which Defendant's hourly floor refinishing employees were compensated and the amount of their compensable time as required by law, resulting in Defendant's failure to pay hourly floor refinishing employees for all compensable time, including failure to pay overtime as required by the FLSA.

59. More generally, the Defendant has failed to compensate Plaintiff and all other similarly situated employees for all hours worked, and therefore, Defendant has violated, and continues to violate, the FLSA, 29 U.S.C. § 201, *et seq*.

60. The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

61. Plaintiff, on behalf of himself and all similarly situated employees of Defendant, seeks damages in the amount of all respective unpaid straight time with overtime compensation at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

62. Plaintiff, on behalf of himself and all similarly situated employees of Defendant, seek recovery of all attorney fees, costs, and expenses of this action, to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## COUNT II – KWPA CLAIMS

63. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

64. While employed by Defendant, Plaintiff performed work as an hourly floor refinishing employee.

65. During the Plaintiff's employment, Defendant employed numerous other individuals who had similar job duties as hourly floor refinishing employees with a similar compensation structure as the Plaintiff.

66. Plaintiff brings his Kansas Wage Payment Act ("KWPA") claims as a class action pursuant to the KWPA, K.S.A. 44-324(a) and Fed. R. Civ. P. 23, on behalf of himself and all similarly situated putative plaintiffs.

67. Plaintiff and the putative class members are similarly situated in that they have been subjected to Defendant's common practice of reducing wages without notice in violation of the KWPA, K.S.A. 44-319 & K.S.A. 44-320.

68. The names and addresses of the putative class members are available from the Defendant. To the extent required by law, Plaintiff will seek notice to be provided to said putative class members via First Class Mail and/or by the use of techniques and a form of notice similar to those customarily used in class actions.

69. Plaintiff was ordinarily paid $25 per hour for his labor as an hourly floor refinishing employee. Plaintiff performed his work duties with the reasonable expectation he would be paid this rate.

70. However, occasionally and without warning, his pay would be reduced to as low as $7.25. Plaintiff would only find out his pay had been reduced on pay day when his paycheck and hourly rate showed lower amounts than normal.

71. Upon information and belief, this common practice of lowering wages without notice impacted all hourly floor refinishing employees employed by Defendant.

72. Plaintiff, on behalf of himself and all similarly situated employees of Defendant, seeks damages in the amount of all respective underpaid compensation, any and all applicable statutory penalties, and such other legal and equitable relief as the Court deems just and proper.

WHEREFORE, Plaintiff and class pray for certification of this case as a class action, for judgment in excess of $75,000 in damages, for pre-judgment and post- judgment interest, and attorneys' fees and court costs.

Respectfully submitted,

/s/ *John F. Edgar*
John F. Edgar          KS # 18080
Ryan J. Loehr         KS # 25578
Edgar Law Firm LLC
2600 Grand Blvd., Suite 440
Kansas City, Missouri  64108
Telephone: (816) 531-0033
jfe@edgarlawfirm.com
rjl@edgarlawfirm.com

# EXHIBIT A

## PLAINTIFF CONSENT FORM

I WANT TO JOIN THIS LAWSUIT seeking unpaid wages and overtime against ACME Flooring. I HEREBY CONSENT to be a party plaintiff in the foregoing action seeking unpaid wages, including unpaid overtime under the FLSA. For purposes of this lawsuit, I choose to be represented by John F. Edgar and Ryan J. Loehr and by any other attorneys with whom they may associate to make all decisions on my behalf concerning the method and manner of conducting the case including settlement, payment of attorney's fees and court costs, and all other matters pertaining to this lawsuit.

I understand that the personal information provided on this form will not be used for purposes other than these legal claims.

NOTE: If your address has changed, please update it on this form.

_Kevin Pizzler_      5/11/2023
Signature                                     Date

Kevin Rorgales
Print Name